UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DENNIS MARKER,**

       **Plaintiff,**            **CIVIL ACTION NO. 05-CV-72672-DT**

  vs.

                                     **DISTRICT JUDGE NANCY G. EDMUNDS**

**EDDIE JENKINS,**              **MAGISTRATE JUDGE MONA K. MAJZOUB**
**et. al,**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that Defendant Eddie Jenkins, M.D.'s Motion for Summary Judgment Under FRCP 56 (docket no. 42), and Defendant Robbie Pairolero's Joinder and Concurrence with Defendant Eddie Jenkins MD's Motion for Summary Judgment Under FRCP 56 (docket no. 43) be GRANTED, that Defendants' pending discovery motions (docket nos. 39, 40) be DENIED as moot, and that this action be DISMISSED.

**II.**    **REPORT:**

This matter comes before the Court on both Defendants' motions for summary judgment. Defendant Jenkins filed his motion on October 20, 2006, and Defendant Pairolero filed his joinder motion on the same day. (Docket nos. 42, 43). Defendants have also filed a Motion to Compel Plaintiff's Answers to Defendant's Interrogatories and Request for Production of Documents. (Docket nos. 39, 40). Plaintiff has not responded to the motions for summary judgment, and the time for responding has now expired. The case was referred to the undersigned for all pretrial proceedings on August 18, 2005. The matters are now ready for ruling. 28 U.S.C. § 636(b)(1)(B).   *A* .

*Factual Background*

These facts are taken primarily from Plaintiff's Complaint. Plaintiff is a prisoner of the State of Michigan who was housed at the Mid-Michigan Correctional Facility in St. Louis, Michigan at the time of the complaints at issue in this action. Plaintiff alleges that on February 25, 2004 Defendant Jenkins, a physician at that facility, examined his left eye because Plaintiff was having inflammation and pain in that eye. (Docket no. 1 at 3). Defendant Jenkins advised Plaintiff to use a cold compress on the eye and avoid Ibuprofen. *Id.* Defendant Jenkins told Plaintiff that he would contact the prison optometrist for Plaintiff to be examined. *Id.* Plaintiff began experiencing vision problems on February 27, and Dr. Jenkins again examined Plaintiff and prescribed for him antibiotic eye drops. *Id.* On March 5, 2004 Defendant Jenkins told Plaintiff he was still waiting for the optometrist to contact him. Defendant advised Plaintiff to take Ibuprofen for his pain and continue the eye drops and warm compresses. *Id.* at 4. On March 15 Defendant Jenkins told Plaintiff that he would try to get him an appointment with an ophthalmologist. *Id.* On March 26 Defendant Jenkins observed that Plaintiff's eye had virtually healed. Defendant Jenkins told Plaintiff that he could get an appointment with an optometrist but not with an ophthalmologist. *Id.*

On April 9, 2004 Defendant Pairolero, an optometrist at St. Louis Correctional Facility, examined Plaintiff and diagnosed iritis. *Id.* at 5. Defendant Pairolero noted on Plaintiff's record two medications that Plaintiff should take if his iritis flared up again. Defendant Pairolero advised that no treatment at that time was needed. *Id.* On May 1, 2004 Plaintiff submitted a request to be transferred and on May 19 he arrived at Hiawatha Correctional Facility. On May 23 his eye problem recurred. By May 24 he received the two medications that Defendant Pairolero had noted on his record. *Id.* at 7. On May 28 Plaintiff was transported to be examined by an ophthalmologist, Dr. Stevenson. He diagnosed Plaintiff as having and secondary glaucoma of his left eye. *Id.* at 8. Dr. Stevenson prescribed two additional eye drop solutions. On June 4, 2004 Plaintiff returned to Dr. Stevenson who noted

marked improvement. *Id.* Dr. Stevenson noted further improvement on June 25. On September 27, 2004 Plaintiff underwent surgery on his left eye to ease pressure in his eye. *Id.* at 10. This surgery was successful. Plaintiff continues to have periodic examinations and alleges that his symptoms recur on occasion. *Id.* at 11. Plaintiff has exhausted his administrative remedies.

    *B.*    *Claims*

Plaintiff claims that Defendant Jenkins exhibited deliberate indifference to his serious medical needs by failing to seek a prompt and accurate diagnosis "by priority access to the prison optometrist, or by urgent request for an appointment with an ophthalmologist." *Id.* at 12. Plaintiff also claims that Defendant Pairolero also showed deliberate indifference to his serious medical needs by failing to treat Plaintiff for iritis, or to refer Plaintiff for an appointment with an ophthalmologist. *Id.* Plaintiff also contends that both Defendants were negligent in failing to provide him with access to medical personnel qualified to exercise judgment about Plaintiff's ophthalmic disorder. *Id.* Plaintiff requests as relief damages and a declaratory judgment. *Id.*

    *C.*    *Standard of Review*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

    D.    *Eighth Amendment*

To establish that Defendants violated his Eighth Amendment rights Plaintiff must establish that Defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In cases such as this, the Eighth Amendment has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Objectively, the harm must be sufficiently serious. *Id.* To satisfy the subjective component, Plaintiff must show that Defendants had "a sufficiently culpable state of mind." *Id.* Such a state of mind is one in which "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Negligence does not meet this requirement. *Id.* at 835-40. Moreover, a disagreement with a physician regarding diagnosis and treatment does not state a claim for relief. *Estelle*, 429 U.S. at 105-06.

Defendants contend that Plaintiff has failed to establish that he had a serious medical need or that they exhibited a sufficiently culpable state of mind in their interactions with him. The Court will first address the subjective component of the Eighth Amendment analysis. Defendant Jenkins has submitted an affidavit in which he states the following:

> 3.    I treated Mr. Marker at the Mid-Michigan Correctional Facility, and specifically treated him from February through May, 2004 for an eye condition.
> 4.    Mr. Marker's first request for treatment of his eye condition was made on February 24, 2004. I examined Plaintiff the next day,

      February 25, 2004 and evaluated Mr. Marker's complaint of redness to his left eye, and noted he stated the redness had been present for one to two days. I also noted Mr. Marker was unsure how his eye became reddened, and that he denied trauma to the eye. I found no evidence of a foreign body or infection in Mr. Marker's eye, the eye had no drainage, and hiss [sic] vision was grossly intact bilaterally. I also noted Mr. Marker's eye was evaluated earlier and was flushed by the nursing staff. I concluded Mr. Marker's scleral hemorrhaging would resolve spontaneously and told him to use cold compresses and Ibuprofen, and I would have him return in two to three days to monitor his eye.

5. Two days later, on February 27, 2004, Mr. Marker was again seen in the medical clinic with complaints regarding his eye. He that [sic] he woke that morning with vision impairment and hemorrhage and he denied trauma to the eye or discharge from the eye. I noted Mr. Marker's eye showed no evidence of corneal or scleral abrasion, no foreign body, no purulent drainage, and that his vision was grossly intact bilaterally. Based on Mr. Marker's presentation, I wrote a plan to rule out conjunctivitis, and ordered him to take antibiotic drops for five days and return to the clinic in one week.

6. On March 5, 2004, less than one week after his last appointment, I again followed-up on Mr. Marker. While he reported sensitivity to light and left eye pain, I observed that his eye was basically unchanged and continued to have no drainage. I continued my plan to rule out conjunctivitis and told him to continue the Gentamicin antibiotic eye drops for three more days. I planned to re-evaluate him the following week.

7. On March 15, 2004, I again evaluated Mr. Marker's eye. Mr. Marker's left eye continued to be red, even after treatment with antibiotic drops. I therefore completed a CMS Authorization Request requesting an Ophthalmology consult for Mr. Marker. In the request I noted Mr. Marker's scleral hemorrhaging for three weeks, pain in his left temporal region, photophobia, and vision blurring, and that his symptoms were not relieved with the use of antibiotic eye drops.

8. On March 19, 2004, the request for an Ophthalmology consultation was denied.

9. On March 26, 2004, I again saw Mr. Marker, this time for a primary complaint of left foot pain. I checked Mr. Marker's left eye and found his vision to be blurry, but that he stated eye was better. Mr. Marker's left eye was only mildly reddened, and Plaintiff's vision was grossly intact. As a result, I believed his left eye conjunctivitis/scleral hemorrhage was resolving. I also

           ordered Mr. Marker was to be scheduled with the Optometry service for follow-up for his visual changes.

10. On April 9, 2004, Mr. Marker underwent evaluation by Optometrist Dr. Robbie Pairolero, who found Mr. Marker was status-post iritis, and that he did not have active iritis. Optometrist Pairolero suggested a treatment plan if Mr. Marker's iritis recurred.

11. On May 6, 2004, I again saw Mr. Marker and noted his complaint of a floater in his left eye, but also found he had no current symptoms of iritis. I planned to continue to monitor Mr. Marker's eye condition.

12. On May 19, 2004, Mr. Marker was transferred to Hiawatha Correctional Facility, and was no longer under my care.

(Docket no. 42, ex. C, Affidavit of Eddie Jenkins, M.D.).

Because Plaintiff did not respond to the summary judgment motions, the facts in this affidavit are not opposed for purposes of this motion. *See Anderson*, 477 U.S. at 252. There is not any material difference in the events as described by Defendant Jenkins and as Plaintiff described them in his Complaint. The disagreement is over whether these facts show that Defendant Jenkins was deliberately indifferent to Plaintiff's serious medical need.

Plaintiff relies on the fact that there was some delay in his seeing an optometrist or ophthalmologist once Defendant Jenkins examined him. He claims that Defendant Jenkins should have given him "priority access" to these other medical professionals. (Complaint at 12). Defendant Jenkins' affidavit shows that he began treating Plaintiff on February 24. Defendant saw Plaintiff two more times and then on the third visit on March 15 completed a request for Plaintiff to see an ophthalmologist. This request was denied, however, on March 19. There is no evidence that the denial was in any way attributable to Defendant Jenkins. The request came just 19 days after Plaintiff first saw Defendant Jenkins. Defendant Jenkins was treating Plaintiff with compresses, pain medication, and antibiotic eye drops during this period. When Defendant Jenkins saw Plaintiff again on March 26 he arranged for Plaintiff to be seen by an optometrist.

These facts provide no basis for a jury to find that Defendant Jenkins was deliberately indifferent to any serious medical need of Plaintiff. "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Similarly, Defendant Jenkins' decision to treat Plaintiff as he did before requesting that he be seen by an ophthalmologist or optometrist was a medical judgment which does not represent cruel and unusual punishment. The Eighth Amendment claims against Defendant Jenkins should be dismissed.

Plaintiff alleges that Defendant Pairolero failed to treat him for iritis or refer him to an ophthalmologist. (Complaint at 12). Defendant Pairolero has also submitted an affidavit which is not opposed by Plaintiff. He states as follows:

> 2. On April 9, 2004, I examined Dennis James Marker.
> 3. Pursuant to the April 9, 2004 examination, I observed that Dennis James Marker had a previous history of iritis.
> 4. Iritis is a disease of the eye which is usually episodic in nature.
> 5. In my medical judgment, the examination of Dennis James Marker did not reveal evidence of active iritis on April 9, 2004.
> 6. I noted, but did not prescribe two medications, Prednisolone and Homatropine, on the document attached hereto as Exhibit A.
> 7. I did not prescribe Prednisolone or Homatropine on April 9, 2004, but instead noted that these medications should be prescribed should the condition recur, because the purpose of both of these medications, and each of them, are to treat active iritis, and not to prevent the recurrence of iritis.
> 8. In my medical judgment, there is no medication or treatment that will prevent the recurrence of iritis.
> 9. In my medical judgment, prescription of Prednisolone or Homatropine on April 9, 2004 would have done nothing to prevent a recurrence of Dennis James Marker's iritis.
> 10. In my medical judgment, prescription of Prednisolone or Homatropine on April 9, 2004 would have involved the risk of serious side effects, including elevated pressure in Mr. Marker's eye along with premature cataract formation.

(Docket no. 43, ex. 1, Affidavit of Robbie Pairolero, O.D.).

Plaintiff has not shown in any way that Defendant Pairolero incorrectly concluded that Plaintiff was not suffering from active iritis on April 9, the only time that this Defendant examined Plaintiff. Plaintiff has also not shown that Defendant Pairolero incorrectly concluded that prescribing the two medications to treat active iritis when Plaintiff was not suffering from that condition would have involved risks of harming Plaintiff. Finally, since it is undisputed that Plaintiff was not suffering from iritis when Defendant Pairolero examined him, there is no basis upon which a jury could find that Defendant should have referred Plaintiff to an ophthalmologist. Plaintiff has failed to establish that he was suffering from a serious medical need when he saw Defendant Pairolero and that this Defendant had the sufficiently culpable state of mind to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at 834-37. The Eighth Amendment claim against Defendant Pairolero should therefore be dismissed.

    E.    *State Law Claims*

Both Defendants also move for dismissal of the state law tort claims because Plaintiff failed to follow the requirements of Michigan state law for medical malpractice actions which requires that a Notice of Intent be served prior to the civil action and that an Affidavit of Merit be filed. *See Mich. Comp. Laws* § 600.2912b & 2912d. The Affidavit of Merit must be signed by a health professional who is believed to meet the requirements for an expert witness under state law. *See Mich. Comp. Laws* §§ 600.2912d(1) & 600.2169. Plaintiff's claims involve issues of medical judgment, therefore although he has stated the claims as ordinary negligence claims they would be subject to the medical malpractice procedures under state law. *See Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 594 N.W.2d 455, 465-66 (1999). There is no dispute that Plaintiff failed to comply with these laws. The Michigan state courts dismiss the claims without prejudice when a plaintiff fails to follow these procedures. *See id.*

-8-

There is some question whether the state law requirements of the filing of the Notice of Intent and Affidavit of Merit are applicable in this federal action. *See McCaffery v. St. Joseph Mercy Hosp.*, 2000 WL 1279159, slip copy at n.7 (E.D. Mich. Aug. 15, 2000). However, even if Plaintiff's failure to file these documents does not mandate dismissal of Plaintiff's state law claims, they must be dismissed because Plaintiff has failed to identify an expert who, in addition to signing the Affidavit of Merit, will testify in support of his medical malpractice claim. *See id.* at n.9. The applicable standard of care is an essential element in a medical malpractice action. *Id.* The Defendants' motions put Plaintiff on notice of the need for such an expert. It is clear from Plaintiff's filings that he has no such expert witness.[1] Accordingly, summary judgment should be granted on Plaintiff's state law claims.

F.    *Discovery Motions*

In light of these recommendations, Defendants' pending discovery motions should be denied as moot.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

---

[1] Plaintiff submitted a proposed stipulation of dismissal after Defendants filed their summary judgment motions. (Docket no. 44). The proposed stipulation is defective for several reasons including because it is not signed by opposing counsel. Fed. R. Civ. P. 41(a)(1). However, it does show that Plaintiff is not interested in pursuing this action at this time and that he has not arranged for an expert witness as would be required for his medical malpractice claims.

& *Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 14, 2006         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Dennis Marker and Counsel of Record on this date.

Dated: November 14, 2006         s/ Lisa C. Bartlett
                                 Courtroom Deputy

-10-